## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHE DIAGNOSTICS CORPORATION, : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | C.A. No. |
| : | |
| ANALYTICAL DIAGNOSTICS LAB OF NEW : | **JURY TRIAL DEMANDED** |
| YORK, INC., : | |
| : | |
| Defendant. : | |

## COMPLAINT

Plaintiff, Roche Diagnostics Corporation ("Plaintiff"), by and through its undersigned counsel, Benesch, Friedlander, Coplan & Aronoff LLP, brings this action against Analytical Diagnostics Lab of New York, Inc. (the "Defendant"), and alleges as follows:

## PARTIES AND JURISDICTION

1.      At all times hereinafter mentioned, Plaintiff was and is a domestic corporation, organized and existing under and pursuant to the laws of the State of Indiana with a principal place of business of 9115 Hague Road, Indianapolis, Indiana 46250.  Plaintiff is therefore a citizen of the State of Indiana and of no other state.

2.      Upon information and belief, Defendant is a New York corporation with a principal place of business in the State of New York.  Defendant is therefore a citizen of the State of New York and of no other state.

3.      The amount in controversy involved in this action exceeds $75,000.00 exclusive of interest and costs.

4.     This Court has jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. § 1332 because it is a controversy between citizens of different states and the amount of such controversy exceeds $75,000.00 exclusive of interest and costs.

5.     Venue is proper under 28 U.S.C. § 1391.

## FACTS

6.     Plaintiff and Defendant (collectively, the "Parties") entered into the Roche Diagnostics Master Agreement (the "Agreement") dated on or about December 26, 2007.  A true and correct copy of the Agreement is attached hereto as **Exhibit "A"**.

7.     Pursuant to the Agreement and accompanying schedules, Defendant agreed to rent or lease certain equipment (the "Collateral") and purchase certain levels of reagents and supplies (the "Reagents") from Plaintiff.

8.     The Collateral is described as: One (1) Cobas 6000 c501 with Core Serial Number 76219, One (1) Cobas e601 Serial Number 192508, and One (1) 2010 Rack Serial Number 131218.

9.     Section D3 of the Agreement states a minimum purchase requirement for the Reagents and mandates that Defendant fulfill that minimum purchase requirement each year to remain in compliance with the terms of the Agreement (the "Reagent Commitment"). (Agreement ¶ D3).  Defendant failed to satisfy the Reagent Commitment under the Agreement, and as such, Defendant is in default of the Agreement.  (Agreement ¶ A6).

10.     Plaintiff provided Defendant with notice of the foregoing default (the "Notice of Default") under the Agreement on February 28, 2012.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit "B"**. The Notice of Default was served on Defendant by

certified mail and a true and correct copy of the certified mail return receipt is attached hereto as **Exhibit "C"**.

11.     Due to Defendant's failure to cure the default within the time period specified in the Agreement, the Plaintiff, pursuant to sections A7(2) and B5 of the Agreement, is entitled to exercise various remedies provided for by the Agreement, including, but not limited to, requiring payment of all sums owed under the Agreement and repossessing the Collateral.

12.     Plaintiff notified Defendant of these remedies if it failed to cure the default under the Agreement.

### FIRST CAUSE OF ACTION AGAINST THE DEFENDANT
### BREACH OF CONTRACT

13.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 12 hereof as if the same were more fully set forth herein.

14.     Plaintiff and Defendant entered into and executed the Agreement, a valid and binding contract, whereby Defendant promised to perform in accordance with the Agreement, including, but not limited to, complying with the Reagent Commitment under the Agreement.

15.     Plaintiff performed all of its obligations according to the terms of the Agreement.

16.     Defendant breached the Agreement by failing to perform in accordance with the Agreement, including, but not limited to, satisfying the Reagent Commitment.

17.     Because of the default, Defendant is required to immediately pay all sums due to Plaintiff under the Agreement together with such loss of bargain charges provided for by the Agreement.

18.     Defendant's breach of its obligations under the Agreement has caused Plaintiff to be injured and entitles the Plaintiff to recover the amount of $140,208.25, plus such other and further amounts that may be determined at the time of trial hereon.

## SECOND CAUSE OF ACTION AGAINST THE DEFENDANT
## ACCOUNT STATED

19.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 18 hereof as if the same were more fully set forth herein.

20.   Plaintiff and Defendant entered into and executed the Agreement, a valid and binding contract, whereby Defendant promised to perform in accordance with the Agreement, including, but not limited to, complying with the Reagent Commitment under the Agreement.

21.   Plaintiff performed all of its obligations according to the terms of the Agreement.

22.   Defendant breached the Agreement by failing to perform in accordance with the Agreement, including, but not limited to, satisfying the Reagent Commitment.

23.   Plaintiff provided Defendant with notice of the foregoing default (the "Notice of Default") under the Agreement on February 28, 2012.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit "B"**.  The Notice of Default was served on Defendant by certified mail and a true and correct copy of the certified mail return receipt is attached hereto as **Exhibit "C"**.  At no time has Defendant disputed or objected to the Notice of Default.

24.   On or around February 28, 2012, Plaintiff provided Defendant with an invoice, dated February 28, 2012, in the amount of $133,824.79 relating to the loss of bargain charge owed to Plaintiff as a result of Defendant's default on the parties' Agreement.  A true and correct copy of the February 28, 2012 invoice is attached hereto as **Exhibit "D"**.  At no time has Defendant disputed or objected to the February 28, 2012 invoice.

25.   On or around March 12, 2012, Plaintiff provided Defendant with an invoice, dated March 12, 2012, in the amount of $6,344.71 relating to Plaintiff's servicing of a urine analyzer owned by Defendant on March 6, 2012.  A true and correct copy of the March 12, 2012 invoice is attached hereto as **Exhibit "E"**.  At no time has Defendant disputed or objected to the March 12, 2012 invoice.

7551730 v1

26. Defendant's failure to dispute or object to the February 28, 2012 and March 12, 2012 invoices within a reasonable time frame established an account stated for the amounts shown as due on the invoices.

27. By reason of the foregoing, Defendant is liable to Plaintiff for an amount to be determined at trial, plus interest commencing at 30 days following the breach at New York's 9% statutory rate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

A.     Enter judgment in its favor on all matters in dispute;

B.     Enter judgment in its favor and against Defendant on Count I, in the amount of $140,208.25, plus such other and further amounts that may be determined at the time of trial hereon, plus pre and post judgment interest, attorneys' fees, costs, expenses, and such other and further relief as the Court deems just and proper; and

C.     Enter judgment in its favor and against Defendant on Count II, in an amount to be determined at trial, plus pre and post judgment interest, attorneys' fees, costs, expenses, and such other and further relief as the Court deems just and proper.

7551730 v1

## JURY DEMAND

Plaintiff hereby demands trial by jury, by the maximum number of jurors permitted by law, on all issues so triable herein.

By: _____

Michael J. Barrie, Esquire
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7068

- and -

Benesch, Friedlander, Coplan & Aronoff LLP
White Plains Center
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 682-6812
*Counsel for the Plaintiff*

7551730 v1

# EXHIBIT A

 

# ROCHE DIAGNOSTICS
## Master Agreement

*55043328*     *40274721*

| | |
|---|---|
| Analytical Diagnostics<br>2115 Ave X<br>Brooklyn, NY 11235 | Roche Diagnostics Corporation<br>9115 Hague Road<br>Indianapolis, Indiana 46250-0457<br>317-521-2000 |

This Master Agreement (the "Agreement") between Analytical Diagnostics ("Customer") and Roche Diagnostics Corporation ("RD") contains the terms and conditions under which Customer agrees to use or purchase, as applicable, the Equipment, Reagents and/or Service detailed in each Schedule to this Agreement (each, a "Schedule").

## A. GENERAL TERMS AND CONDITIONS

**A1. DELIVERY, INSTALLATION, ACCEPTANCE AND COMMENCEMENT:** This Agreement becomes effective and the terms and conditions contained herein will apply to every transaction Customer enters into with RD after Customer has signed it and RD has accepted it. Thereafter, each Schedule hereto will become effective after Customer has signed and RD has accepted that particular Schedule. The terms and conditions in this Agreement will apply to each Schedule. If Equipment is not included in the Schedule, then the Commencement Date will be the date of RD's first shipment of reagent/supplies. If Equipment is included in the Schedule, after Customer has signed and RD has accepted the applicable Schedule, RD will deliver and install the Equipment specified on the face of that Schedule to Customer's designated facility. WHEN RD INSTALLS EACH PIECE OF EQUIPMENT, CUSTOMER AGREES TO INSPECT IT TO DETERMINE IF IT IS IN GOOD WORKING ORDER. A PIECE OF EQUIPMENT WILL BE DEEMED IRREVOCABLY ACCEPTED BY CUSTOMER IF CUSTOMER HAS NOT GIVEN RD WRITTEN NOTICE WITHIN 5 CALENDAR DAYS AFTER INSTALLATION THAT SUCH PIECE OF EQUIPMENT IS NOT IN GOOD WORKING ORDER. Upon such notice, RD will place the piece of equipment in good working order. CUSTOMER'S OBLIGATION TO MAKE PAYMENTS WITH RESPECT TO EACH PIECE OF EQUIPMENT COVERED BY THIS AGREEMENT OR A SCHEDULE HERETO SHALL COMMENCE ON THE DAY THE PIECE OF EQUIPMENT IN QUESTION FIRST BEGINS REPORTING PATIENT BILLABLE RESULTS, AND CUSTOMER WILL NOTIFY RD IMMEDIATELY WHEN THIS OCCURS. THIS DATE WILL BE KNOWN AS THE "COMMENCEMENT DATE". CUSTOMER AGREES THAT SUCH COMMENCEMENT AND NOTIFICATION SHALL NOT BE UNREASONABLY DELAYED. FOR GENERAL PURPOSE LABORATORY INSTRUMENTS THAT DON'T REPORT PATIENT BILLABLE RESULTS (E.G., MAGNAPURE, LIGHT CYCLER, ETC), COMMENCEMENT WILL OCCUR ON COMPLETION OF ALL ROCHE INSTALLATION ACTIVITIES. If the Equipment will not be used for patient diagnosis the expected Commencement Date will occur simultaneously on the acceptance date. Commencement of reporting patient billable results is anticipated to begin within 60 days of delivery of each piece of equipment to Customer's designated facility. RD and Customer agree to work together to achieve reporting of patient billable results within the 60 day period, or as soon thereafter as practical under the circumstances. If a Commencement Date cannot be achieved during this 60-day period, RD reserves the right, to be exercised in RD's sole discretion, upon reasonable notice to reclaim the equipment and invoice Customer for delivery, installation and de-installation costs incurred. These deliveries, installation and de-installation costs shall only be charged to Customer if Customer was responsible for failure to achieve Commencement. RD will record the Commencement

Date on the face of the applicable Schedule and return a copy to Customer. If multiple pieces of equipment are contemplated by any particular Schedule, Customer's acceptance and obligations to make payments will be determined on a piece-by-piece basis. Nothing contained herein should be construed to mean that acceptance or the obligation to make payments will be contingent on installation or the reporting of patient billable results by all equipment described on the particular Schedule in question. In addition, RD reserves the right to revise or extend the term of each Schedule, when a Schedule contains more than one piece of Equipment, in order to provide a coterminous end date for all pieces of Equipment contained on that Schedule, corresponding with the Commencement Date for the last piece of Equipment on that Schedule to achieve commencement.

**A2. SHIPMENTS:** RD will ship the Reagents, Equipment and/or other products under each Schedule to Customer's designated facility. RD will select the carrier and be responsible for loss or damage to the Reagents, Equipment and/or other products while in transit and until delivery is made to Customer's designated facility. Customer assumes the risk of loss and damage to the Equipment immediately upon delivery to Customer's facility. Customer will pay all freight, shipping and special delivery charges. These charges will be included on RD's invoices to Customer.

**A3. PAYMENT TERMS:** All payments are due 30 days from RD invoice date.

**A4. TAXES:** Customer will pay when due, either directly or by reimbursing RD, all taxes (including, without limitation, all personal property taxes), including interest or penalties, relating to this Agreement and each Schedule. This responsibility shall survive the termination of this Agreement. RD will not bill Customer for payment of any sales or use tax for which the Customer is exempt, as long as Customer maintains a tax exempt status.

**A5. LIMITED WARRANTY; COMPLIANCE WITH SPECIFICATIONS:** RD warrants that all Reagents and replacement parts for Equipment furnished under this Agreement and any applicable Schedule will be free from defects in materials and workmanship and will meet all manufacturer's written specifications until the expiration date printed on the label (for Reagents) or installation date (for replacement parts). RD warrants the Equipment furnished under this Agreement and any applicable Schedule will be free from defects in materials and workmanship (except for consumable items and lamps) and will meet all manufacturer's written specifications for a period of one year (90 days in the case of parts in direct contact with reagents). RD reserves the right to ship certified used Equipment in instances where the Schedule indicates an End-of-Term Purchase Option of Fair Market Value or None. At RD's option, RD will either replace or repair free of charge all parts which prove to be defective and are subject to such warranty. RD will ship replacement parts at no cost to Customer. THE LIMITED

NOV 20 2007<br>RECEIVED

WARRANTY SET FORTH IN THIS SECTION SHALL BE IN LIEU OF, AND RD EXPRESSLY DISCLAIMS, ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL RD BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. Customer agrees that RD makes no representation and provides no warranty for non-RD products. Customer holds RD harmless from any responsibility or claims that arise from the use of non-RD product. Any other warranty which may be provided with respect to any particular Equipment and/or Reagents is detailed in the applicable Schedule. Any warranty provided with respect to any Equipment will begin on 1) the shipment date if Customer installed; 2) on the Commencement Date if RD installed.

**A6.  DEFAULT:** (1) RD is in "Default" under this Agreement if: (a) RD does not perform any of RD's obligations under this Agreement and this failure continues for 15 calendar days after Customer has notified RD in writing of RD's non-performance; (b) RD becomes insolvent, RD dissolves or is dissolved, or RD assigns its assets for the benefit of RD's creditors or enters (voluntarily or involuntarily) into any bankruptcy or reorganization proceeding. (2) Customer is in "Default" under this Agreement if: (a) Customer fails to provide payment of any sum to be paid hereunder within 15 calendar days of its due date; (b) Customer fails to comply with its Reagent Commitment; (c) Customer does not perform any of its other obligations under this Agreement or in any other agreement with RD and this failure continues for 15 calendar days after RD has notified Customer in writing of its non-performance; (d) Customer becomes insolvent, Customer dissolves or is dissolved, or Customer assigns its assets for the benefit of its creditors, or enters (voluntarily or involuntarily) into any bankruptcy or reorganization proceeding; or (e) Customer offers products purchased or received under this Agreement for resale.

**A7.  REMEDIES:** (1) If RD is in Default, Customer may cancel or terminate the particular Schedule under which RD is in Default, without payment of any "loss of RD bargain" charges specified in the applicable Schedule or elsewhere in this Agreement which would have otherwise applied in the event of an early termination by Customer. In the event Customer terminates because RD is in Default, (a) Customer will remain obligated to pay all sums owed to RD prior to the date of Customer's termination; and (b) Customer will have an opportunity to purchase the Equipment at a price calculated from the Equipment's amortization schedule, a copy of which will be provided to Customer upon its termination. To the extent Customer did not elect to purchase the Equipment, RD will be entitled to exercise its rights specified in Section A7 (2)(d) of this Agreement. (2) If Customer is in Default, RD may do one or more of the following: (a) cancel or terminate this Agreement or any or all other agreements or Schedules that RD has entered into with Customer; (b) require Customer to immediately pay RD (i) any amounts owing under this Agreement at the time of Default, (ii) late charges of 1.5% per month, or the maximum permitted by law, whichever is less, on all payments not received by RD on or before the due date, (iii) as compensation for loss of RD bargain and not as a penalty, a sum as set forth in the applicable Schedule or elsewhere in this Agreement, and (iv) all other amounts due or that become due under this Agreement; (c) require Customer to deliver the Equipment and Reagents to RD as set forth in Section B7 of this Agreement; (d) cause RD or RD's agent to peacefully repossess the Equipment and Reagents without court order and Customer will not make any claims against RD for damages or trespass or any other reason; (e) cease providing Service under this Agreement or any other agreements RD has entered into with Customer; (f) exercise any other right or remedy available at law or in equity. Notwithstanding the foregoing, Sections A7 (2)(c) and A7 (2)(d) shall not apply to any Equipment to which Customer holds title and in which RD has no security interest. If RD takes possession of the Equipment, RD agrees to sell or otherwise dispose of it

with or without notice, at a public or private sale, and to apply the net proceeds (after RD has deducted all costs related to the sale or disposition of the Equipment) to the amounts that Customer owes RD. Customer agrees that if notice of sale is required by law to be given, 10 days notice shall constitute reasonable notice. Customer will remain responsible for any amounts that are due after RD has applied such net proceeds. TO THE EXTENT EITHER PARTY IS IN DEFAULT, THE DEFAULTING PARTY SHALL PAY ALL OF THE COSTS OF THE NON-DEFAULTING PARTY OF ENFORCING ITS RIGHTS HEREUNDER, INCLUDING REASONABLE ATTORNEYS' FEES.

**A8.  ASSIGNMENT:** Customer may not assign, sell, transfer or sublease the Equipment or its interest in this Agreement without our prior written consent which shall not be unreasonably withheld. RD may, with written notice to Customer, sell, assign or transfer this Agreement and its rights in the Equipment. The new owner will have the same rights and benefits that RD has now under this Agreement but not its obligations, which RD shall retain. The rights of the new owner will not be subject to any claims, defenses or set-off that Customer may have against RD. The foregoing restrictions on assignment of Customer's rights in any Equipment will not apply to any Equipment owned by Customer.

**A9.  INDEMNITY:** RD agrees to indemnify Customer from all liabilities arising from RD's negligence or willful misconduct or RD's failure to perform its duties or obligations as set forth in this Agreement, except to the extent caused by Customer's negligence or willful misconduct. Customer agrees to indemnify RD from all liabilities arising from its misuse of the Equipment and Reagents provided under this Agreement. The obligation of either party to indemnify the other pursuant to this Agreement shall be contingent upon timely notification by the indemnitee to the indemnitor of any claims, suit or service of process; control by the indemnitor over the conduct and disposition of any claim, demand or suit; and cooperation by the indemnitee in the defense of the claim, demand or suit.

**A10.  CREDIT INFORMATION:** Customer agrees to provide RD with complete and accurate financial statements and other financial information that RD reasonably requests from time to time and Customer understands and acknowledges RD to obtain credit bureau reports and make credit inquiries that RD determines are necessary.

**A11.  TRAINING:** Any training to be provided by RD (including the costs and expenses thereof) is detailed on the applicable Schedule.

**A12.  DISCLOSURE OF DISCOUNTS:** Any discounted products or services provided by RD to Customer under this Agreement are provided with the express understanding that RD or its distributor (to the extent the products or services are provided by RD's authorized distributor) will provide Customer with invoices that fully and accurately disclose the discounted price of all such products and services. Customer, as an institution required to file Medicare/Medicaid cost reports with the Federal and/or appropriate state government, has an obligation under Federal law to fully and accurately report any discounts in its cost reports (Public Law 100-93, the "Medicare and Medicaid Patient and Program Protection Act of 1987", 42 CFR part 1001 as amended, July 29, 1991).

**A13.  GOVERNING LAW, VENUE, RIGHT TO JURY TRIAL:** Customer agrees that the laws of the State of Indiana will govern this Agreement and Customer consents to the jurisdiction of and venue in any court located within the State of Indiana. Customer expressly waives its rights to trial by jury.

**A14.  SEVERABILITY:** Should any provision of this Agreement be held invalid, ineffective or unenforceable, the remaining terms will remain in full force and effect.

**A15.  FORCE MAJEURE:** Either party's obligations under this Agreement shall be suspended in the event that party is hindered or prevented from complying with its obligations because of labor disturbances, wars, terrorist acts, fires, storms, accidents,

NOV 2 0 2007

RECEIVED ... 2007

interferences or any other similar cause beyond its reasonable control.

**A16.** **ENTIRE AGREEMENT:** Customer agrees that the terms and conditions in this Agreement and each Schedule (together with any attachments or exhibits thereto), if any, make up the entire Agreement between Customer and RD with respect to the subject matter hereof. In the event of a conflict between the terms of this Agreement and/or any Schedule (or any attachments or exhibits thereto) the terms of the applicable Schedule shall control. If Customer delivers a purchase order with this Agreement or any Schedule hereto, it is for reference purposes only and the terms of this Master Agreement and any applicable Schedule will be the only terms and conditions that apply.

**A17.** **NOTICES:** All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail, certified with return receipt requested, addressed to the party receiving the notice at its address shown on the face of this Agreement. Notices to RD should be marked Attn: Law Department. All of RD's rights shall survive the term of this Agreement and each Schedule.

**A18.** **MISCELLANEOUS:** The titles and headings used in this Agreement are for convenience only and shall not be used to interpret the terms and conditions of this Agreement. This Agreement is not binding on RD until signed by an authorized representative of RD at RD's Indianapolis office. No waiver of or modification to any term of this Agreement is valid unless it is in writing and signed by RD and Customer. Customer agrees that RD is authorized to supply missing information or correct obvious errors in this Agreement and each Schedule. If RD delays or fails to enforce any of its rights under this Agreement or any Schedule, RD will be able to enforce its rights at a later time. The terms of this Agreement, including pricing, are the confidential information of RD and shall not be disclosed by Customer to any third party, except as may be required by law or government regulation.

**B.** **ADDITIONAL TERMS AND CONDITIONS APPLICABLE TO NON-PURCHASED EQUIPMENT ONLY (FOR PURCHASED EQUIPMENT, SEE SECTION C)**

**B1.** **LOSS and DAMAGE:** Customer is responsible for any loss, theft, destruction of, or damage to the Equipment (collectively "Loss") for any cause at all, whether or not insured, until it is delivered to RD as set forth in Section B7 of this Agreement.

**B2.** **EQUIPMENT LOCATION & SERVICE:** Customer will not alter, modify or move the Equipment from the location listed on the face of the respective Schedule without RD's prior written consent. Customer must enter into a service program as required by the applicable Schedule.

**B3.** **TITLE AND RECORDING:** RD is the owner of and will hold title to the Equipment. Customer consents to RD filing a UCC Financing Statement on the Equipment. If this transaction is deemed to be a contract intended for security, Customer grants RD a purchase money security interest in the Equipment (including any replacements, substitutions, additions, attachments and proceeds). Customer will keep the Equipment free of all other liens and encumbrances.

**B4.** **TERMINATION OF SCHEDULES:** Unless RD is in default under Section A6, Customer may not terminate or cancel any Schedule that includes Equipment with an end-of-term purchase option. Beginning with the twenty-four month anniversary of the Commencement Date, provided that Customer is not in Default, Customer may terminate any Schedules that contain Equipment without an end-of-term purchase option on an annual anniversary of the Commencement Date by providing RD with 90 days advance written notice of Customer's intent to terminate. In the event some but not all of the Equipment is deleted from any Schedule, Customer and RD agree to renegotiate the price and quantity of Reagents that Customer is obligated to purchase under that Schedule.

**B5.** **LOSS OF BARGAIN CHARGES:** If Customer is in Default (as defined in Section A6 of this Agreement) under any Schedule relating to non-purchased Equipment, RD's compensation for the loss of RD bargain, which shall be paid by Customer pursuant to Section A7 (2)(b) and shall be in addition to any other remedies specified in this Agreement or the applicable Schedule, shall be as follows: (i) any amounts owing under the Schedule at the time of Default, and either (ii) for Equipment with an end-of-term purchase option, all unpaid Equipment Payments for the remaining term of the applicable Schedule, discounted to present value at a rate of 5% per year, or (iii) for Equipment without an end-of-term purchase option, 15% of the sum of the remaining Equipment Payments for the term of the applicable Schedule. Upon Customer request, for Equipment with or without an end-of-term purchase option, Customer will have an opportunity to purchase the Equipment at a price calculated from the Equipment's amortization schedule, a copy of which will be provided to Customer by RD.

**B6.** **END-OF-TERM OPTIONS:** In the event a Schedule contains Equipment with an end-of-term purchase option, Customer may, at the end of the term of the Schedule or at any time thereafter, with 90 days prior written notice by Customer, purchase the Equipment, in accordance with the purchase option stated on the face of the Schedule. If Customer elects not to exercise any such option, with 90 days prior written notice by either party, Customer will return the Equipment to RD. Upon the stated expiration date of any Schedule, that Schedule will automatically renew month-to-month, for full billing months, until either party provides the notice described in this section. All terms and conditions set forth herein will apply during any automatic renewal period, provided, however, that upon expiration of the stated term and automatic conversion to month-to-month renewals, RD shall have the right, in its discretion and without notice to the Customer, to increase the pricing applicable to Reagents and Service.

**B7.** **RETURN OF EQUIPMENT:** If, at any time, Customer is required by the terms of this Agreement to return Equipment to RD, Customer will return such Equipment in as good condition as when Customer received it, except for ordinary wear and tear, to a location designated by RD. If Customer meets their commitment in full, RD will pay all expenses of de-installing, crating and shipping and Customer will insure the Equipment for its full replacement value during shipment.

**C.** **TERMS AND CONDITIONS FOR CASH PURCHASES OF EQUIPMENT**

**C1.** **INAPPLICABLE TERMS:** The following terms will not apply to any transaction that is a cash purchase of Equipment by Customer: Section A6; Section A7; Section A8 and all Sections of Part B.

**C2.** **REAGENT COMMITMENTS:** The terms of Part D will apply to the extent you enter into a Schedule relating to the purchase of Reagents from RD, and to the extent Customer enters into such a Schedule, the terms of Part A previously indicated not to apply to outright purchases of Equipment by

NOV 2 0 2007

RECEIVED

Customer shall continue to apply with respect to sales of Reagents by RD to Customer, even if the Reagents are intended to be used with any purchased Equipment.

**C3. DEFAULT:** With respect to any agreement for any cash purchase of Equipment by Customer, (1) RD is in Default if RD fails to uphold any warranty obligations made by RD with respect to the Equipment, and (2) Customer is in Default if Customer fails to comply with the terms and conditions of payment for the Equipment, as set forth in Section A3.

**C4 REMEDIES:** If RD is in Default, RD will, within a reasonable time, take the necessary action to bring the Equipment into compliance with the applicable warranty. This may, in RD's discretion, include repair or replacement of the Equipment. If Customer is in Default, RD may cancel or terminate this Agreement, the applicable Schedule, and/or any or all other agreements or Schedules that RD has entered into with Customer. In addition, RD may (a) require Customer to return the Equipment to RD, at Customer's expense (including deinstallation, crating, shipping and insurance costs), in as good condition as when Customer received it except for ordinary wear and tear, to a location designated by RD, (b) cause RD or its' agent to peacefully repossess the Equipment without court order and Customer will not make any claims against RD for damages or trespass or any other reason, (c) cease providing service to Customer with respect to any service agreements or Schedules relating to the Equipment in question, or (d) exercise any other right or remedy available to RD at law or in equity. Regardless of the remedy or remedies RD elects to pursue, Customer will remain responsible for all expenses associated with the installation, deinstallation and refurbishment of the Equipment, including but not limited to freight, labor and material charges. The extent of refurbishment required will be determined by RD based on what RD deems reasonably necessary in order to resell the equipment. If RD takes possession of the Equipment, RD will sell or dispose of it and apply the proceeds in accordance with the applicable provisions of Section A7.

## D. ADDITIONAL TERMS AND CONDITIONS APPLICABLE TO REAGENTS

**D1. REAGENTS DEFINED:** For purposes of this Agreement and all Schedules hereto, "Reagents" shall include all items listed as "Reagents" on all Schedules to this Agreement.

**D2. RETURNS AND CREDITS:** All returns of Reagents and Supplies (including returns for credit) must be made in accordance with RD returned goods policy currently in place. A copy of this policy will be provided to Customer at its request. RD reserves the right to change this policy from time to time with notice to Customer. No returns will be accepted unless they are made in accordance with RD's current returned goods policy.

**D3. REAGENT and SUPPLY PURCHASES:** Customer agrees to purchase 100% of the contracted levels of Reagents, in terms of number of kits/tests, as applicable, as well as total dollar amount (the "Commitment") during the term of each Schedule, as set forth and attached to the Schedule in the form of a Reagent and Supply Exhibit. After the first six months, Customer agrees that if it fails to purchase 1/2 of the annual total of its Commitment during the second six months, or if Customer fails to purchase the annual total of its Commitment during any subsequent 12-month period throughout the term of the applicable Schedule or any renewal thereof, RD may declare Customer in default and/or adjust the pricing of each Reagent/Supply to reflect the volumes actually being purchased. If Customer's volumes significantly increase, RD commits to review Customer's Reagent/Supplies pricing, at Customer's request, for possible adjustment on future purchases.

**D4. TITLE TO REAGENTS/SUPPLIES:** Title to Reagents/Supplies will pass upon delivery by RD to the Customer's delivery point.

**D5. PRICING ADJUSTMENTS:** After the first 12 months from the commencement of each Schedule, RD may adjust each contracted Reagent/Supply price once annually upon 30 days advance written notice.

**D6. TERMINATION OF SCHEDULES:** Unless RD is in default under Section A6., Customer may not terminate or cancel any Schedule to purchase Reagents and Supplies, or any Schedule that is associated with Equipment with an end-of-term purchase option. Beginning with the twenty-four month anniversary of the Commencement Date, provided that Customer is not in Default, Customer may terminate a Reagent/Supply Schedule that is associated with Equipment without an end-of-term purchase option on an annual anniversary of the Commencement Date of that Schedule by providing RD with 90 days advance written notice of Customer's intent to terminate. In the event some but not all of the Equipment is deleted from any Schedule, Customer and RD agree to renegotiate the price and quantity of Reagents that Customer is obligated to purchase under any associated Reagent/Supply Schedule.

**D7. LOSS OF BARGAIN CHARGES:** If Customer is in Default (as defined in Section A6 of this Agreement) under any Schedule relating to Reagents/Supplies, RD's compensation for the loss of RD bargain, which shall be paid by Customer pursuant to Section A7 (2)(b) and shall be in addition to any other remedies specified in this Agreement or the applicable Schedule, shall be as follows: (i) any amounts owing under the Schedule at the time of Default, and either (ii) an amount equal to ¼ of Customer's annual commitment stated in the applicable Schedule.

**D8. END OF TERM OPTIONS:** Customer may, at the end of the initial term of any Schedule, with 90 days prior written notice by Customer to RD, cancel the Schedule. Upon the stated expiration date of any Schedule, without the notice described in this section, that Schedule will automatically renew month-to-month, for full billing months. All terms and conditions set forth herein will apply during any automatic renewal period, provided, however, that upon expiration of the initial term and the subsequent automatic conversion to month-to-month renewals, RD shall have the ongoing right, in its discretion and without notice to the Customer, to increase the pricing applicable to Reagents.

## E. TERMS APPLICABLE TO PURCHASES MADE VIA AUTHORIZED DISTRIBUTORS

**E1. TERMS OF PURCHASE:** With RD's authorization, Customer may select one of RD's authorized distributors from whom to make purchases required by this Agreement or any Schedule thereto, provided that Customer and Distributor agree that (a) Distributor will be the billing agent for the applicable Schedule, (b) Distributor will assume responsibility and is liable for all corresponding payments to RD for each shipment, (c) RD will not accept any return of products under this Agreement or any Schedule except as specified in RD's returned goods policy then in place; (d) Distributor must execute and remain in compliance with a form of Distributor pricing agreement mandated by RD, (e) participation of Distributor is subject to RD credit approval. RD may require Customer to change Distributors if any Distributor becomes unable to meet its obligations under any agreement between Distributor and RD. Customer must inform RD in writing in advance of electing to use a Distributor, and Customer may change Distributors only by giving RD 30 days advance written notice of such change. Customer hereby agrees to indemnify RD from and against any loss, claim or damage asserted against RD (including legal fees)

## F.   TERMS AND CONDITIONS APPLICABLE TO SERVICE

**F1.   LEVEL AND SCOPE OF SERVICE; SERVICE FEES:**
If Customer is required or otherwise elects to subscribe for a Service Program with RD pursuant to which RD will provide service ("Service") to Equipment owned or operated by Customer, the level of Service, the fees payable to RD for the provision of such Service ("Service Fees"), and a detailed scope of Service to be provided for the stated Service Fees (i.e. number of preventative maintenance visits, hours Service and/or emergency maintenance will be provided, etc.) shall be set forth on a separate Schedule to this Agreement. In all instances, unless otherwise noted, "Service" shall mean labor time, travel time and Service parts.

**F2.   LIMITATIONS ON SERVICE AVAILABILITY:** Service shall only be available on Equipment which is or was (1) new when installed by RD and subject to a Service Schedule thereafter, (2) subject to a maintenance or service agreement with RD at all times prior to the execution of a Service Schedule with respect thereto, or (3) subject to reconditioning by RD and accepted by RD in writing as a candidate for Service under the terms of the applicable Schedule.

**F3.   CUSTOMER OBLIGATIONS:**  Customer agrees to use the Equipment in strict accordance with RD operating instructions, to permit servicing and repair work by RD personnel or RD-approved third party service agents only, and to obtain RD prior written consent prior to connecting the Equipment to any other equipment or using any equipment or accessories not provided by RD with the Equipment. Customer agrees to use the Equipment in an appropriate location and with electrical connections which correspond to the electrical supply specifications of the manufacturer. Customer will protect the Equipment from all adverse elements, such as dirt, dust and liquids of any kind. In the event of necessary or scheduled service, Customer will allow RD personnel access to operating locations of any Equipment to be serviced and provide adequate space around the Equipment. In turn, RD will respect all internal operating procedures of which Customer has advised RD, as well as all of Customer's general security instructions.

**F4.   EXCLUSIONS FROM COVERAGE:**  Customer payments of Service Fees under this Agreement and any Service Schedule do not cover repairs made necessary by (i) operator errors, lack of operator maintenance, abnormal or unapproved uses, acts of third parties, faulty electrical connections, fluctuations or failures in air conditioning, heating or cooling systems and electrical power failures, (ii) force majeure, including natural disasters such as fire, flood, earthquakes, tornadoes, wind damage and lightning strikes, riots, sabotage, demonstrations, acts of terrorism, war, civil war, acts of public authorities and all other causes beyond RD's reasonable control, or (iii) defects or malfunctions of any external computer hardware attached to the Equipment. In the event repairs such as those described in the foregoing sentence are necessary, RD will give Customer a cost estimate describing the work to be performed, the number and cost of supplies and parts to be provided, the expected time to completion, the hourly rate and other details and conditions of the repairs, and Customer will provide RD with a purchase order for such repairs.  Any terms and conditions of Customer's purchase order that conflict with the terms of this Agreement or the applicable Service Schedule are hereby rejected and the terms of this Agreement or applicable Service Schedule shall control. Repairs described in this Section will be billed separately.

**F5.   EQUIPMENT MODIFICATION:**  The Equipment will perform to manufacturer's specifications during any applicable warranty period or service maintenance contract period. However, RD may be required to modify the Equipment in order to improve its use and reliability.  Modifications required to meet quality or reliability specifications will be performed as part of the warranty or service maintenance agreement.  Optional modifications that are not quality related will not be included as part of a warranty or service maintenance agreement.  All modifications shall be the subject of a detailed cost estimate by RD and the Customer will submit a purchase order to RD for such work.  Any terms and conditions of Customer's purchase order that conflict with the terms of this Agreement or the applicable Service Schedule are hereby rejected and the terms of this Agreement or the applicable Service Schedule shall control.  All modification work shall be billed separately except for modifications required to improve use or reliability which occur during any applicable warranty period, which shall be free. Modified Equipment shall be subject to this Agreement and any applicable Service Schedule in all respects.  Modifications shall not extend the normal warranty period.

**F6.   REMOTE ACCESS SERVICE:**  To optimize the functionality, performance and use of Equipment, Customer agrees that RD may from time to time desire to access the Equipment to provide Customer with remote access service connectivity solution (e.g., modem) and a software teleservice tool. Remote access service ("RA Service") may include any of the following: (i) Screen sharing (remote viewing of Customer screens) to view software user interface; (ii) Remote operation of equipment in diagnostic mode; (iii) Performance of component and/or mechanism checks; (iv) Remote configuration of equipment; (v) Data uploads/downloads, data capture, database exporting and transmission of log files; (vi) Transmittal of application software updates; and (vii) any other Service which may be performed under this Agreement. RA Service will be provided at RD's discretion on a case-specific basis for troubleshooting and repair and/or a long-term basis to perform data tracking, evaluation and review of equipment use to facilitate optimization or enhanced functionality. RA Service will be provided at RD's option and will only be provided with respect to Equipment manufactured, sold, distributed and/or serviced by RD. Nothing contained herein shall obligate RD to provide RA Service with respect to any diagnostics equipment. RD will have no obligation to alert or notify Customer of any issues or problems arising in connection with any Equipment which are or would have been discernable from a study or review of any data obtained from the Equipment. Any repairs to any Equipment via RA Service will be subject to the service warranty set forth in Section F7 of this Agreement.  IN ADDITION, IN NO EVENT SHALL RD BE LIABLE FOR ANY INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES ARISING FROM OR IN ANY WAY RELATING TO THE PERFORMANCE OF THE RA SERVICE, INCLUDING LOSS OF PATIENT OR LABORATORY DATA OR DAMAGE TO ANY DATA INTERFACE BETWEEN RD EQUIPMENT AND OTHER LABORATORY EQUIPMENT, COMPUTER SOFTWARE OR COMPUTER HARDWARE. THIS EXCLUSION APPLIES REGARDLESS OF WHETHER SUCH DAMAGES ARE SOUGHT FOR BREACH OF WARRANTY, BREACH OF CONTRACT, NEGLIGENCE OR STRICT LIABILITY IN TORT OR FOR ANY OTHER REASON.

**F7.   LIMITED SERVICE WARRANTY:** RD warrants that the Service provided under this Agreement and any attachments or exhibits to this Agreement or to Schedules to this Agreement will be free from defects in workmanship for a period of 30 calendar days from the date of service except for replacement parts, which shall be covered by the warranty set forth in Section A5. THE LIMITED WARRANTY SET FORTH IN THIS SECTION SHALL BE IN LIEU OF, AND RD HEREBY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT

NOV 2 0 2007

TO THE SERVICES PROVIDED, EXCEPT THE LIMITED WARRANTY SET FORTH ABOVE. RD IS NOT LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO, LOST PROFITS OR REVENUES, LOSS OF THE USE OF CAPITAL, COST OF SUBSTITUTE EQUIPMENT, FACILITIES OR SERVICES AND DOWN-TIME COSTS, RESULTING FROM OR ARISING IN CONNECTION WITH THE PERFORMANCE, DELAY IN PERFORMANCE OR NON-PERFORMANCE OF ANY TERMS OR CONDITIONS OF THIS AGREEMENT OR FROM THE USE OR MISUSE OF ANY EQUIPMENT OR ANY MATERIAL OR WORKMANSHIP DELIVERED HEREUNDER, EVEN IF WE HAVE BEEN ADVISED, KNEW, OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. AS YOUR EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY WE WILL RE-PERFORM ANY SERVICE WHICH IS DEFECTIVE.

G.    THE UNDERSIGNED, BEING DULY AUTHORIZED SIGNATORIES, AGREE TO ALL TERMS AND CONDITIONS SET FORTH HEREIN AND THEY HEREBY EXECUTE THIS AGREEMENT.  ONLY A CORPORATE REPRESENTATIVE IN THE INDIANAPOLIS OFFICE IS AUTHORIZED TO SIGN THIS AGREEMENT ON BEHALF OF ROCHE DIAGNOSTICS CORPORATION.

| CUSTOMER | ROCHE DIAGNOSTICS CORPORATION |
|---|---|
| X (D J Sr/y<br>(Customer Name) | |
| Signature: X G. J. Sr/y | Signature: J. A. Comito |
| By (Printed): X G. J. SONTAS | By (Printed): Joseph A. Comito |
| Title: X PRES. | Title: Manager, Business Operations Center |
| Date: X 11-15-07 | Date: 12/26/07 |

RECEIVED
DEC 27

# Roche Diagnostics Master Agreement/Alliance Agreement
## Centralized/Molecular Diagnostics Product Schedule

### SECTION 1: EQUIPMENT LOCATION AND BILLING INFORMATION

| | | GPO Affiliation: | Customer Purchase Order | Agreement #: |
|---|---|---|---|---|
| Customer Name and DBA Name | Analytical Diagnostics | Novation | Reference #: | 40274722 |
| Equipment Address | 2115 Ave. X | City Brooklyn | State/Zip NY 11235 | Customer Telephone Number 718 646-6000 |
| Billing Address (if different from above) | | City | State/Zip | Customer Account Number 55043328 |

### SECTION 2: REAGENTS and SUPPLIES

The Reagent and Supply Exhibit(s) attached to this Schedule details the type, quantity and price of the Reagents and Supplies you have agreed to purchase, on an annual basis under this Schedule.   ☒ Cost-Per-Kit   ☐ Cost-Per-Donor,

### SECTION 3: EQUIPMENT AND PAYMENT INFORMATION

Term of this Schedule 60 Months    Commencement Date [1]

Pricing for all products on this Schedule will start on the Commencement Date.

| Init | Equipment[1] | | Analyzer Net Selling Price (Cash Purchase Only) OR Check Box if Customer Owned | End-of-Term Purchase Option (for Financed Units Only) | Mthly Equiv. Pmt. (Indicate Amt. OR check if "Included" in Reagents) |
|---|---|---|---|---|---|
| 1. | System/Model: Cobas 6000 C501/e601 Qty 1 Serial #: | | $ ☐ Cash Purchase ☐ Owned | ☐ FMV[2] ☐ $1.00 ☒ None | $ ☒ Included |
| 2. | System/Model: 2010 Rack 1 Serial #: | Qty | $ ☐ Cash Purchase ☐ Owned | ☒ FMV[2] ☐ $1.00 ☐ None | $ ☒ Included |

### SECTION 4: SERVICE

Service options and additional terms are detailed in Appendix S, Attachment 1, and/or Appendix M, if applicable, to the Master/Alliance Agreement Schedule.

| Chooses Coverage Financed Equipment Gold or Silver Only | Service Payment Options (not applicable if "Included" in Reagents | Service Amount and Invoice Options (indicate Payment Amount or Payment Start Date, or check if "Included") |
|---|---|---|
| ☒ Gold ☐ Depot ☐ Silver ☐ Other | ☐ Annual ☐ Quarterly ☐ Monthly | $ ☐ Month 1 ☐ Lump Sum (in advance) ☒ Included ☐ Month 13 |
| ☐ Gold ☐ Depot ☒ Silver ☐ Other | ☐ Annual ☐ Quarterly ☐ Monthly | $ ☐ Month 1 ☐ Lump Sum (in advance) ☒ Included ☐ Month 13 |

### SECTION 5: TRAINING

Analyzer training will be conducted at RD in Indianapolis, Indiana. The cost of tuition, RD provided lodging and meals, local ground transportation to and from the training class and between the airport and hotel will be paid by RD for the following number of operator trainees: Unit 1: 2   Unit 2: 2

### SECTION 6: ADDITIONAL TERMS AND CONDITIONS

1. See Attachment O for additional terms and conditions applicable to Unit 1 above (Operation Overdrive).
2. See the Novation Attachment to Schedule to Master Agreement for additional terms and conditions applicable to both Units, excluding A25 which applies to only Unit 2.

### SECTION 7: AUTHORIZED ACCEPTANCE

**CUSTOMER**

By signing this Schedule, Customer acknowledges that if Customer submits a purchase order with this Schedule, it is for reference purposes only and the terms and conditions of the Roche Diagnostics Master Agreement/ Alliance Agreement and this Schedule and any Addenda will be the only terms and conditions that apply.

By: _____ (Authorized Customer Signature)

Date: 8/20/07

Printed Name: _____   Title: _____

**ROCHE DIAGNOSTICS CORPORATION[1]**

This Schedule is not binding on RD until signed by an authorized representative of RD at RD's home office

By: _____ (Authorized In-House Signature)   Date: _____

Printed Name: Joseph A. Comito   Title: Manager, Business Operations Center

[1] An Authorized RD Representative in Indianapolis, Indiana will complete the Agreement Number, Schedule Number, Commencement Date and RD Authorized Acceptance section.
[2] FMV is "Fair Market Value"

RECEIVED NOV 27 2007

CD/MD Product Schedule    rev10.16.07    page 1 of 1

## ATTACHMENT O to MASTER/ALLIANCE AGREEMENT

**The following terms shall also apply to the Master/Alliance Agreement with respect to Customer's acquisition of the cobas® 6000 analyzer outlined on the Schedule to which this Attachment O is attached. In the event of a conflict between this Attachment O and the Master/Alliance Agreement and/or the Schedule, the terms of this Attachment O shall control.**

1. RD will pay freight and shipping charges in connection with shipment of the **cobas** 6000 analyzer to Customer.

2. Reagent pricing will be held firm for the first thirty-six (36) months of the Term of the Schedule.

3. Customer may not terminate or cancel any portion of the Schedule relating to the **cobas** 6000 analyzer (including the Commitment for Reagents to be used on the **cobas** 6000 analyzer) until after the thirty-six month anniversary of the Commencement Date.

4. RD will reimburse you for the reagents used on the newly placed module (i.e. credit for reagents used on the new IA module if you currently use our Chemistry module, but not for the Chemistry reagents) during the first three (3) months after the instrument begins reporting patient results. The Reagents actually used will be determined based on use rates shown on the analyzer and measured by RD.

5. RD will provide Customer with the additional two options marked below (a "2" marked in a box indicates that Customer will receive that option twice).

   ☐ No-charge Gold-level service on the integrated **cobas** 6000 analyzer (**cobas c 501** and **cobas e 601** modules) for one (1) year (note that service is included in the one-year warranty, so this is no-charge service during the second year of the term of use). The standard cost of this service is $_____.

   ☐ No-charge Gold-level service on either the **cobas c 501** or **cobas e 601** module of the **cobas** 6000 analyzer for two (2) years (note that service is included in the one-year warranty, so this is no-charge service during the second and third years of the term of use. The standard cost of this service is $_____.

   ☒ A $25,000 credit applicable to the acquisition of an RD automation solution, Middleware Solutions product, or other chemistry, immunochemistry or urinalysis equipment, to be applied against an RD invoice.

   ☐ A credit of up to $25,000 for one of (a) the amount used to buy out a competitor contract, or (b) a trade-in allowance equal to the current fair market value of an existing chemistry or immunochemistry analyzer to which Customer holds hold title, to be applied against a future RD invoice.

   ☒ A credit of up to $25,000 for an LIS interface and/or water filtration system to be used with the **cobas** 6000 analyzer, to be applied against a future RD invoice.

   ☐ A credit of up to $25,000 for chemistry or immunochemistry alternate source testing not done on the **cobas** 6000 analyzer where the current **cobas** 6000 platform menu does not provide a testing option, to be applied against a future RD invoice.

Attachment O to Roche Diagnostics Master/Alliance Agreement Product Schedule (Form MLT)
Page 1 of 2

DEC 1 '7 2007

RECEIVED
DEC 27 2007

☐ Cancellation of any amount that becomes owed by Customer (including loss of bargain charges or remaining equipment payments) by reason of early termination of any existing RD chemistry or immunochemistry contract.

To the extent any of the options selected involves a credit to be applied against future RD invoice, Customer must apply the credit to an RD invoice during a twelve (12) month period beginning on the date on which the credit is issued by RD to Customer. The credit will only be issued to Customer after Customer has: (a) acquired the item in question (for example, acquired Middleware Solutions or used an alternate source for chemistry or immunochemistry testing) and (b) provided RD with reasonable proof of receipt of the goods/services and payment by Customer to the vendor of those goods/services. Proof of receipt and payment should be sent by fax to (800) 888-1902 or by mail to the following address: Roche Diagnostics Corporation 9115 Hague Road, Indianapolis, IN 46250, Attn: CF2 Logistics.

DEC 1 2007

RECEIVED

rom Archive

# NOVATION ATTACHMENT TO SCHEDULE TO MASTER AGREEMENT

The following revisions shall be made to the Master Agreement (the "Agreement"):

1. **Section A2, "Shipments" shall be amended and expanded as follows:**

   Notwithstanding the forgoing, RD agrees to pay freight, shipping, and delivery charges associated with one standing order per month. Customer will remain responsible for all freight, shipping and delivery charges (including expedited freight) for all reagent orders other than this monthly standing order.

2. **Section A5, "Compliance With Specifications; Limited Warranty" shall be amended and expanded as follows:**

   (a) The scope of the warranty on reagents, equipment and products shall be expanded to specifically include all attachments, subsystems and components thereof.

   (b) All warranted items will meet published manufacturer's specifications and will conform to any drawings and samples furnished to Customer by RD.

   (c) Field-installed options, modifications and used Equipment will be free from defects in materials and workmanship 90 days from installation date.

   (d) The warranty on parts in direct contact with reagents will be one full year.

   (e) To the extent any product that is Equipment that is covered by a RD warranty or service plan that provides a 98% Uptime Guarantee (as described on Appendix 5) fails to meet the 98% Uptime Guarantee for three (3) consecutive months during the warranty period or term of the service plan, and the failure is not caused by the Customer's misuse, RD will, at the Customer's option, replace the non-conforming Equipment or terminate any remaining obligations of the Customer associated with the non-conforming Equipment (including but not limited to rental/lease obligations, service obligations and associated reagent/supply commitments,) RD shall bear all costs of returning and replacing the defective products, as well as all risk of loss or damage to the defective products from and after the time they leave the physical possession of the Customer.

3. **The text of Section A9 shall be deleted and replaced with the following:**

   **INDEMNITY:** RD shall release, indemnify, hold harmless, and, if requested, defend Customer and its officers, directors, regents, agents, subsidiaries, affiliates and employees from and against any claims, liabilities, damages, actions, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses, expert fees and court costs) of any kind or nature, whether at law or in equity, arising from or caused in any part by (1) the breach of any representation, warranty, covenant or agreement of RD contained in this Agreement; (2) RD's infringement of any patent, copyright or trademark by reason of the sale or use of any Equipment, Reagents and/or Supplies; or (3) the defective condition of any Equipment, Reagents and/or Supplies caused by the actions or omissions of RD, including, without limitation, improper storage of any product, or any defect in material, workmanship, design, manufacturing or instructions. Such indemnification, hold harmless and right to defense shall not be applicable to the extent the claim, liability, damage, action, cost or expense arises as a result of an act or failure to act of Customer.

RECEIVED
DEC 27 2007

4. Add the following Sections A19-A25:

**A19   PRODUCT CONDITION:**   Unless otherwise agreed by Customer in writing, all Equipment, Reagents and other products will be new.

**A20   RECALL OF PRODUCTS:** RD shall reimburse Customer for any reasonable cost associated with any product corrective action, withdrawal or recall requested by RD or required by any governmental entity, provided, however, that this obligation shall be limited to reimbursement of a Customer's actual costs to send impacted testing to an alternate testing facility (for example, a reference lab) for a reasonable period of time and shall not include reimbursement of the acquisition of a replacement testing platform or system to conduct on-site testing. RD agrees to promptly send all notices relating to Equipment and Reagents/Supplies (including without limitation recall notices and product availability notices) to each Customer with copies to Novation. Such notices will be provided as quickly as is reasonably possible after completion by RD of all processes and approvals required by the United States Food and Drug Administration ("FDA") to issue such notices. Further, RD agrees, as quickly as possible, to notify Novation and Customer of any problems in the manufacture or production of any products and of any back-order situation that might affect RD's ability to meet RD's obligations under this Agreement provided that such preferential treatment is not controlled or limited by the FDA.

**A21   CONFIDENTIAL INFORMATION:**   RD agrees that it will (i) keep strictly confidential and hold in trust all of Customer's Confidential Information, and (ii) not later than 30 days after the expiration of all agreements with Customer, return to Customer its Confidential Information. "Confidential Information" as used herein, will consist of all documents and other materials of Customer containing information related to the Customer's programs of a proprietary or sensitive nature not readily available through sources in the public domain.

**A22   USE OF NAMES:**   RD agrees that it will not use in any way in its promotional, informational, or marketing activities or materials the names, trademarks, logos, symbols of Customer without Customer's prior written consent.

**A23   ANNUAL BUSINESS REVIEWS:** RD's local sales and support team will, upon request provide an annual business review to Customer, which may include product service history and performance trends, service delivery metrics, parts support performance, remote diagnostics effectiveness or customer satisfaction ratings form independent surveys.

**A24   NEW TECHNOLOGY:**   If, during the term of this Schedule, RD offers new FDA-cleared technology in a product category that corresponds with the Equipment included on this Schedule, RD will analyze Customer's current usage of the Equipment/Reagents listed on the Schedule to determine if the new technology will better meet Customer's needs. If RD determines this to be the case, RD will work with Customer to negotiate a new Schedule with Equipment/Reagents utilizing the new technology. The new Schedule will replace this Schedule and may require a price increase and/or an extended term.

NOV 2 0 2007

RECEIVED
DEC 27 2007

**A25  OEM ALLOWANCES:**  In connection with the acquisition of the Equipment, RD agrees to facilitate Customer's acquisition of an LIS interface, UPS and/or water filtration system (the "Ancillary Item(s)") by providing either (check one) ☐ credit against invoice or a ☒ cash rebate of up to $ _10,000.00_ to be applied ☐ against any future RD invoice for the Equipment, Reagents and/or Service included on this Schedule or ☒ as a cash rebate.  These funds may be used or received only during a twelve (12) month period beginning on the date on which RD signed the Schedule to which this "Novation Attachment To Schedule To Master Agreement" is attached  and will be applied by RD only after Customer has: (a) engaged a third party vendor to provide the Ancillary Item(s) and ensured satisfactory installation at Customer's site; (b) provided RD with reasonable proof that the work has been completed (for example, vendor's final invoice); and (c) provided RD with reasonable proof of payment to vendor.  Any portion of funds not used by Customer during the twelve (12) month period after RD's signature date on the Schedule to which this "Novation Attachment To Schedule To Master Agreement" is attached will automatically expire. If Customer does not check a box to indicate whether Customer prefers a credit or rebate, the funds outlined above will be applied as a credit against RD invoice.

5.  In Section F5, the following text should be added after the third sentence:

"; provided, however, that updates of software which are necessary to enable the software to continue to operate at existing functionality levels or to correct software defects will be provided at no cost to Customer for the duration of the warranty period and service contract (if any). Improvements to software that add new functionality to the software or to any Equipment or other product will not be considered updates.  Arrangements will be made to install software updates within 60 days after the release of such update."

RECEIVED
DEC 27 2007

NOV 2 0 2007

# EXHIBIT B



Analytical Diagnostics
2115 Ave. X
Brooklyn, NY 11235
ATTN: Mr. Nathan Sontag, Laboratory Owner

February 28, 2012

Re: Elecsy 2010 Rack Serial Number 1312-18
    Cobas 6000 c501 Serial Numbeer 0762-19
    Cobas 6000 e601 Serial Number 1925-08

Dear Mr. Sontag,

Your facility is party to an agreement with Roche Diagnostics Corporation ("Roche Diagnostics") dated December 26, 2008 (the "Agreement") pursuant to which you agreed to rent or lease certain equipment (the "Equipment") and purchase certain levels of reagents and supplies (the "Reagents") from Roche Diagnostics.

Section D3 of your Master Agreement clearly states a minimum purchase requirement for Reagents, and also mandates that you must fulfill this minimum purchase requirement each year to remain in compliance with the Agreement terms. It has been brought to our attention that your facility has failed to purchase the requisite level of Reagents from Roche Diagnostics. Therefore, per Section A6 (2), we are sending you this letter to inform you, in writing, that you are in "Default".

We are required to provide you 15 calendar days from the date of your receipt of this notice of default in which to cure your non-performance (i.e. bring your Reagent purchase level to the minimum purchase requirement). If you fail to effect a cure within that 15 day period, per Section A7 (2) and Section B5 we may exercise any of our remedies under the Agreement without further notice to you, including (a) canceling the Agreement, (b) requiring you to immediately pay all sums owed to us under the Agreement together with any "loss of bargain" payments specified therein, and (c) repossess the Equipment without court order. We are prepared to take each of these steps, including removing the Equipment from your facility, and intend to do so if you fail to effect a cure.

If you have any questions or would like to discuss this further, please feel free to contact your Roche Diagnostics Sales Representative, Jim Hill, at 1-317-521-2000, Ext. 26576.

Sincerely yours,

ROCHE DIAGNOSTICS CORPORATION

Jim St. Louis
Manager, Finance and Accounting

CC:  AE
     Judy Wagner
     CBSC

# EXHIBIT C

8020
0000
3113
0000
7074

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Recipient's Name (Please Print Clearly) (to be completed by mailer)
Analytical Diagnostics  Nathan Sontag
Street, Apt. No.; or PO Box No.
2115 Ave X
City, State, ZIP+4
Brooklyn, NY 11235

PS Form 3800, February 2000                See Reverse for Instructions

Notification #
22032895
Loss of Bargain 134, 132 th
INV # 901974254

# EXHIBIT D

ADDRESS INVOICE QUESTIONS TO:
P.O. BOX 50457
INDIANAPOLIS IN 46250-0457
1-800-428-5074
CHRISTINE MCCORQUODALE, X15429
CHRISTINE.MCCORQUODALE@ROCHE.COM

**DEBIT MEMO**

**Second Original**

 Roche

| | |
|---|---|
| INVOICE NO.* | 902786821 |
| INVOICE DATE | 02/28/2012 |
| PAYER NO. | 55030275 |
| SOLD TO NO. | 55043328 |
| ORDER NO. | 72043507 |

**B I L L T O**
ANALYTICAL DIAGNOSTIC LAB OF NY IN
ACCOUNTS PAYABLE DEPT
2115 AVENUE X
BROOKLYN NY 11235

**S H I P T O**
ANALYTICAL DIAG LAB
OF NEW YORK INC
2115 AVE X
BROOKLYN NY 11235-2910
USA

CUSTOMER P.O. Loss of Bargain Charge
SOLD TO CONTACT
PHONE 718-646-6000
PAYMENT TERMS NET 30

REQUEST NO. 72043507
SHIPPING DATE

| CATALOG NO./ROCHE MATL NO./DESCRIPTION | UOM | QTY ORDERED | QTY SHIPPED | UNIT PRICE | EXTENDED PRICE | TAX |
|---|---|---|---|---|---|---|
| Catalog No.:CP | PC | 1 | 1 | 122916.00 | 122,916.00 | 10908.79 |
| Roche Matl No.: 03840182001 | | | | | | |
| COMPENSATION/LOSS OF OUR BARGAIN | | | | | | |
| LOSS OF BARGAIN CHARGE DUE TO | | | | | | |
| CONTRACT DEFAULT. PURSUANT TO | | | | | | |
| THE CONTRACT, THE LOSS OF BARGAIN | | | | | | |
| CHARGE IS CALCULATED AS FOLLOWS: | | | | | | |
| COBAS C501 INSTRUMENT - MONTHLY | | | | | | |
| RENTAL PAYMENT INCLUDED IN | | | | | | |
| REAGENT PRICES = $3,020.80 X 13 | | | | | | |
| MONTHS REMAINING UNDER CONTRACT | | | | | | |
| = $39,270 X 15% = $5,890 | | | | | | |
| COBAS E601 INSTRUMENT - MONTHLY | | | | | | |
| RENTAL PAYMENT INCLUDED IN | | | | | | |
| REAGENT PRICES = $2,454.40 X 13 | | | | | | |
| MONTHS REMAINING UNDER CONTRACT | | | | | | |
| = $31,907 X 15% = $4,786 | | | | | | |
| ELECSYS 2010 RACK INSTRUMENT - | | | | | | |
| MONTHLY RENTAL PAYMENT INCLUDED | | | | | | |
| IN REAGENT PRICES = $1,417.50 X 9 | | | | | | |
| MONTHS REMAINING UNDER | | | | | | |
| CONTRACT, PRESENT VALUED AT 5% | | | | | | |
| DISCOUNT RATE = $12,495 | | | | | | |
| REAGENTS - ANNUAL REAGENT | | | | | | |
| COMMITMENT OF $398,981 X 25% = | | | | | | |
| $99,745 | | | | | | |

**INVOICE NO.*  902786821**

TAXES  10,908.79

**ALL CLAIMS MUST BE WITHIN 10 DAYS**

TOTAL  $  **133,824.79**

*PLEASE REFERENCE THIS INVOICE ON ALL INQUIRIES AND CORRESPONDENCE.

WE HEREBY CERTIFY THAT ALL GOODS AND SERVICES COVERED BY THIS INVOICE WERE PRODUCED AND FURNISHED IN COMPLIANCE WITH THE REQUIREMENTS OF THE FAIR LABOR STANDARDS ACT OF 1938 AND ANY REGULATIONS AND ORDERS ISSUED THEREAFTER.

FEDERAL TAX I.D. 13-2511923  DUNS 001824663

**R E M I T T O**
ROCHE DIAGNOSTICS CORPORATION
MAIL CODE 5508
PO BOX 105046
ATLANTA, GA 30348-5046

Medicare/Medicaid Discount Disclosure Requirements

The price shown on this invoice is net of discounts known and provided at the time of purchase. If Customer claims reimbursement under Medicare, Medicaid or any other federal or state healthcare program for the goods or services on this invoice, Customer must fully and accurately report any price reduction (including free product) obtained as a part of a warranty, discount, rebate program, or other price reduction mechanism, including any discounts or rebates associated with the goods or services on this invoice which are received by Customer subsequent to the issuance of this invoice, in the applicable reporting manner or claim for payment filed with the applicable government payer agency as required under 42 C.F.R. Section 1001.952(h).

# EXHIBIT E

# INVOICE

INVOICE NO.* 902820220
INVOICE DATE 03/12/2012
PAYER NO. 55030275
SOLD TO NO. 55043328
ORDER NO. 121987949



Page 1 of 2

ADDRESS INVOICE QUESTIONS TO:
P.O. BOX 50457
INDIANAPOLIS IN 46250-0457
1-800-428-5074
CHRISTINE MCCORQUODALE, X15429
CHRISTINE.MCCORQUODALE@ROCHE.COM

**Second Original**

| B I L L T O | ANALYTICAL DIAGNOSTIC LAB OF NY  IN<br>ACCOUNTS PAYABLE DEPT<br>2115 AVENUE X<br>BROOKLYN NY 11235 | S H I P T O | ANALYTICAL DIAG LAB<br>OF NEW YORK INC<br>2115 AVE X<br>BROOKLYN NY  11235-2910<br>USA |
|---|---|---|---|

CUSTOMER P.O. 112-039

SOLD TO CONTACT
  PHONE 718-646-6000

PAYMENT TERMS NET 30

DELIVERY NO.

SHIPPING DATE 03/12/2012

| CATALOG NO./ROCHE MATL NO./DESCRIPTION | UOM | QTY ORDERED | QTY SHIPPED | UNIT PRICE | EXTENDED PRICE | TAX |
|---|---|---|---|---|---|---|
| SERVICE ORDER:        US4314648 | | | | | | |
| ANALYZER:               03051323001 | | | | | | |
| SERIAL #:                   1412-010 | | | | | | |
| INSTRUMENT:           URISYS 2400 AUTOMATED URINE ANALYZER | | | | | | |
| DATE SERVICE PERFORMED:03/06/2012 | | | | | | |
| Catalog No.:TRAVEL | HR | 1 | 1 | 400.00 | 400.00 | 35.50 |
| Roche Matl No.: 03854515001 | | | | | | |
| TRAVEL CHARGES | | | | | | |
| Catalog No.:LABOR | HR | 3 | 3 | 400.00 | 1,200.00 | 106.50 |
| Roche Matl No.: 03846075001 | | | | | | |
| LABOR CHARGES | | | | | | |
| Catalog No.:TRAVEL | HR | 1 | 1 | 400.00 | 400.00 | 35.50 |
| Roche Matl No.: 03854515001 | | | | | | |
| TRAVEL CHARGES | | | | | | |
| Catalog No.:TRAVEL | HR | 1 | 1 | 400.00 | 400.00 | 35.50 |
| Roche Matl No.: 03854515001 | | | | | | |
| TRAVEL CHARGES | | | | | | |
| Catalog No.:LABOR | HR | 2.500 | 2.500 | 400.00 | 1,000.00 | |
| Roche Matl No.: 03846075001 | | | | | | |
| LABOR CHARGES | | | | | | |
| Catalog No.:TRAVEL | HR | 1 | 1 | 400.00 | 400.00 | 35.50 |
| Roche Matl No.: 03854515001 | | | | | | |
| TRAVEL CHARGES | | | | | | |
| Catalog No.:TRAVEL | HR | 1 | 1 | 400.00 | 400.00 | 35.50 |
| Roche Matl No.: 03854515001 | | | | | | |
| TRAVEL CHARGES | | | | | | |

## INVOICE NO.* 902820220

| R E M I T T O | ROCHE DIAGNOSTICS CORPORATION<br>MAIL CODE 5508<br>PO BOX 105046<br>ATLANTA, GA 30348-5046 | ALL CLAIMS MUST<br>BE WITHIN 10 DAYS | **CONTINUED**<br>*PLEASE REFERENCE THIS INVOICE ON<br>ALL INQUIRIES AND CORRESPONDENCE. |
|---|---|---|---|

WE HEREBY CERTIFY THAT ALL GOODS AND SERVICES COVERED BY THIS INVOICE
WERE PRODUCED AND FURNISHED IN COMPLIANCE WITH THE REQUIREMENTS OF
THE FAIR LABOR STANDARDS ACT OF 1938 AND ANY REGULATIONS AND ORDERS
ISSUED THEREAFTER.

FEDERAL TAX I.D. 13-2511923  DUNS 001824663

Medicare/Medicaid Discount Disclosure Requirements

The price shown on this invoice is net of discounts known and provided at the time of purchase. If Customer claims reimbursement under Medicare, Medicaid or any other federal or state
healthcare program for the goods or services on this invoice, Customer must fully and accurately report any price reduction (including free product) obtained as a part of a warranty, discount,
rebate program, or other price reduction mechanism, including any discounts or rebates associated with the goods or services on this invoice which are received by Customer subsequent to the
issuance of this invoice, in the applicable reporting manner or claim for payment filed with the applicable government payer agency as required under 42 C.F.R. Section 1001.952(h).

# INVOICE

Roche

**Second Original**

ADDRESS INVOICE QUESTIONS TO:
P.O. BOX 50457
INDIANAPOLIS IN 46250-0457
1-800-428-5074
CHRISTINE MCCORQUODALE, X15429
CHRISTINE.MCCORQUODALE@ROCHE.COM

| | |
|---|---|
| INVOICE NO.* | 902820220 |
| INVOICE DATE | 03/12/2012 |
| PAYER NO. | 55030275 |
| SOLD TO NO. | 55043328 |
| ORDER NO. | 121987949 |

Page 2 of 2

**BILL TO**
ANALYTICAL DIAGNOSTIC LAB OF NY  IN
ACCOUNTS PAYABLE DEPT
2115 AVENUE X
BROOKLYN NY 11235

**SHIP TO**
ANALYTICAL DIAG LAB
OF NEW YORK INC
2115 AVE X
BROOKLYN NY  11235-2910
USA

CUSTOMER P.O. 112-039
SOLD TO CONTACT
PHONE 718-646-6000
PAYMENT TERMS NET 30

DELIVERY NO.
SHIPPING DATE 03/12/2012

| CATALOG NO./ROCHE MATL NO./DESCRIPTION | UOM | QTY ORDERED | QTY SHIPPED | UNIT PRICE | EXTENDED PRICE | TAX |
|---|---|---|---|---|---|---|
| Catalog No.:INCIDENTAL PARTS<br>Roche Matl No.: 03843637001<br>INCIDENTAL PARTS CHARGES | HR | 1 | 1 | 25.00 | 25.00 | 2.22 |
| Catalog No.:614-0235<br>Roche Matl No.: 03759369001<br>BED (3) ASSY | PC | 1 | 1 | 1602.52 | 1,602.52 | 142.22 |

| INVOICE NO.* 902820220 | TAXES | 517.19 |
|---|---|---|

ROCHE DIAGNOSTICS CORPORATION
MAIL CODE 5508
PO BOX 105046
ATLANTA, GA 30348-5046

ALL CLAIMS MUST
BE WITHIN 10 DAYS

**TOTAL  $  6,344.71**

*PLEASE REFERENCE THIS INVOICE ON
ALL INQUIRIES AND CORRESPONDENCE.

WE HEREBY CERTIFY THAT ALL GOODS AND SERVICES COVERED BY THIS INVOICE
WERE PRODUCED AND FURNISHED IN COMPLIANCE WITH THE REQUIREMENTS OF
THE FAIR LABOR STANDARDS ACT OF 1938 AND ANY REGULATIONS AND ORDERS
ISSUED THEREAFTER.

FEDERAL TAX I.D. 13-2511923  DUNS 001824663

Medicare/Medicaid Discount Disclosure Requirements

The price shown on this invoice is net of discounts known and provided at the time of purchase. If Customer claims reimbursement under Medicare, Medicaid or any other federal or state
healthcare program for the goods or services on this invoice, Customer must fully and accurately report any price reduction (including free product) obtained as a part of a warranty, discount,
rebate program, or other price reduction mechanism, including any discounts or rebates associated with the goods or services on this invoice which are received by Customer subsequent to the
issuance of this invoice, in the applicable reporting manner or claim for payment filed with the applicable government payer agency as required under 42 C.F.R. Section 1001.952(h).