# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHE DIAGNOSTICS CORPORATION, | : |
| Plaintiff, | : |
| vs. | : C.A. No. 13-cv-1936-VEC |
| ANALYTICAL DIAGNOSTICS LAB OF NEW YORK, INC. and ANALYTICAL DIAGNOSTICS LABORATORIES, INC., | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Michael J. Barrie, Esquire
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7068

- and -

Benesch, Friedlander, Coplan & Aronoff LLP
White Plains Center
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 682-6812
*Counsel for the Plaintiff*

Dated: July 31, 2014

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................. 1

III. LEGAL ARGUMENT .............................................................................................. 3

    A. Summary Judgment Standard ..................................................................... 3

    B. Plaintiff Is Entitled to Summary Judgment on Defendants' Second Affirmative Defense ..................................................................................... 4

    C. Plaintiff Is Entitled to Summary Judgment on Defendants' First Cause of Action of Their Counterclaim .................................................................. 6

IV. CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)...................................................................................... 3

*Clark's Pork Farms v. Sand Livestock Sys., Inc.*,
 563 N.E.2d 1292 (Ind. Ct. App. 1990).......................................................... 8, 9

*Gen. Bargain Ctr. v. Am. Alarm Co.*,
 430 N.E.2d 407 (Ind. Ct. App. 1982).......................................................... 10, 11

*Guideone Ins. Co. v. U.S. Water Sys.*,
 950 N.E.2d 1236 (Ind. Ct. App. 2011)......................................................... 9, 10

*Martin Rispens & Son v. Hall Farms*,
 621 N.E.2d 1078 (Ind. 1993) ...................................................................... 11, 12

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)..................................................................................... 3, 4

*Michiana Mack, Inc. v. Allendale Rural Fire Prot. Dist.*,
 428 N.E.2d 1367 (Ind. Ct. App. 1981)........................................................... 8

*Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*,
 746 N.E.2d 941 (Ind. 2001) ......................................................................... 12, 13

**Statutes**

Ind. Code § 26-1-2-719(2) ................................................................................. 12

Ind. Code § 26-1-2-719(3) ................................................................................. 11

Ind. Code § 26-2-715(1) ..................................................................................... 8

Ind. Code § 26-2-715(2) ..................................................................................... 8

**Rules**

Fed. R. Civ. P. 30(b)(6)....................................................................................... 5

Fed. R. Civ. P. 56................................................................................................ 3

## I. INTRODUCTION

Plaintiff brought this action for damages arising from Defendants' defaults under the parties' 2007 agreement, including, but not limited to, loss of bargain charges. Defendants have asserted numerous affirmative defenses and a counterclaim against Plaintiff in a "kitchen sink" attempt to muddy what is a straightforward breach of contract case. Plaintiff now moves for partial summary judgment on two grounds. First, Plaintiff asks this Court to strike Defendants' Second Affirmative Defense. There is no material dispute of fact that, contrary to Defendants' contentions, a November 28, 2011 partial settlement agreement between the parties is unrelated to (and does not bar) Plaintiff's claims against Defendants in this action. Second, Plaintiff seeks partial summary judgment dismissing Defendants' First Cause of Action of their Counterclaim because Defendants seek incidental and consequential damages that the parties' agreement expressly prohibits.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Material Facts in Support of its Partial Motion for Summary Judgment annexed to Plaintiff's Notice of Motion is incorporated by reference as if fully set forth herein. Plaintiff also offers the following brief factual background to facilitate the Court's understanding of the parties' business relationship that is at the center of this dispute.

Plaintiff was a primary chemistry vendor for Defendants for many years, providing Defendants with chemistry equipment and corresponding reagents to operate that equipment. (Sontag Dep. Tr. at 42:16-43:3).[1] Defendant Analytical Diagnostics Lab of New York, Inc. ("Analytical New York") is a purchasing company for Defendant Analytical Diagnostics

---

[1] All excepts from the deposition of Mr. Nathan Sontag cited herein are annexed hereto as **Exhibit A**.

Laboratories, Inc. ("Analytical Labs"). Analytical New York purchases lab equipment and other supplies for Analytical Labs, transfers those products to Analytical Labs, and Analytical Labs then pays Analytical New York for the products. (Sontag Dep. Tr. at 9:19-10:14; 11:6-14). In December 2007, Analytical New York entered into a written agreement (the "Master Agreement") with Plaintiff for the use of chemistry equipment known as a "Cobas 6000" by Analytical Labs for a five (5) year term.[2] (*Id.* at 45:24 -46:25; *see also* Wagner Dep. Tr. at 40:15-21).[3] A true and correct copy of the Master Agreement is attached to Plaintiff's First Amended Complaint [Docket No. 47, Ex. A] and annexed hereto as **Exhibit C**. (Sontag Dep. Tr. at 45:24-46:25).

A Cobas 6000 is chemistry equipment that performs clinical chemistry and immunoassay testing. (Sontag Dep. Tr. at 55:10-13). Clinical chemistry testing is routine testing such as glucose and cholesterol testing. (*Id.* at 55:22-24). Immunoassay testing is more extensive testing such as thyroid testing. (*Id.* at 55:25-56:3). A Cobas 6000 creates efficiencies because it is a single platform that can perform both chemistry and immunoassay testing on a single specimen. (*Id.* at 78:19-79:13).

In order to operate the equipment supplied by Plaintiff, Defendants needed to purchase products from Plaintiff known as "reagents." At his deposition, Mr. Sontag offered the analogy that reagents are used to power the equipment similar to how gasoline powers automobiles. (*Id.* at 81:1-8). Therefore, under the Master Agreement, Analytical committed to purchase certain annual volumes of reagents from Plaintiff in exchange for discounted pricing (dependent upon volumes). (*Id.* at 82:9-14).

---

[2] Under the Master Agreement, Analytical New York also leased chemistry equipment from Plaintiff known as a "2010 Rack" or "Elecsys." (*Id.* at 67:19-68:24).

[3] All excerpts from the deposition of Ms. Judy Wagner cited herein are annexed hereto as **Exhibit B**.

After Defendants failed to purchase the level of reagents that they committed to purchase in 2011 (*see* Wagner Dep. Tr. at 103:5-104:2), Plaintiff initiated this action to recover, among other things, "loss of bargain charges" under the Master Agreement. (*See* Plaintiff's First Amended Complaint, Docket No. 47, Ex. D). As Plaintiff's director of corporate credit, Ms. Judy Wagner explained in her deposition that the "loss of bargain charges" are designed to require a customer to pay for reagents at prices based on volume of actual purchases as opposed to prices based on the volume a customer promises to purchase:

> [Plaintiff] entered into an agreement with the customer and the customer received a price based upon the fulfillment of the contract. If the contract doesn't go to its full term, [Plaintiff loses] a bargain because [customer] didn't purchase that full amount of term and [customer] got a lower price than what they should have, because they didn't fulfill the entire agreement. Loss of bargain is to get back to the pricing they would have gotten based upon what they purchased.

(Wagner Dep. Tr. at 35:10-17). The formula for calculating the "loss of bargain charges" is set forth in Sections B5 and D7 of the Master Agreement. (*Id.* at 34:23-35:3).

As Plaintiff demonstrates below, it is entitled to summary judgment as to Defendants' Second Affirmative Defense and Defendants' First Cause of Action of their Counterclaim.

### III. LEGAL ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita*, 475 U.S. at 586-87, (citations omitted). This is such a case.

B. **Plaintiff Is Entitled to Summary Judgment on Defendants' Second Affirmative Defense**

Defendants wrongly contend that Plaintiff's claims for "loss of bargain charges" are barred by a partial settlement agreement entered into by the parties on November 28, 2011. Under that agreement, Defendants assert that "the parties released and discharged each other from any and all claims including loss of the bargain charges previously invoiced to defendants." (*See* Docket No. 49). This affirmative defense fails because the undisputed facts demonstrate that Plaintiff's claims in this action were excluded from the partial resolution reached by the November 28, 2011 settlement agreement (the "2011 Agreement"). As shown below, the undisputed record evidences that the 2011 Agreement resolved only disputed outstanding invoices owed by Defendants to Plaintiff while preserving all other claims and rights of the parties under the Master Agreement (including, but not limited to, Plaintiff's loss of bargain charges arising from Defendants' default *after* the execution of the 2011 Agreement).

The parties entered into the 2011 Agreement on or around November 28, 2011. (Sontag Dep. Tr. at 96:13-19). The 2011 Agreement pertains to the Master Agreement, (Sontag Dep. Tr. at 97:4-17), and resolves only the parties' disputes relating to "products *purchased* and the prices therefore (the 'Disputed Claims')." (2011 Agreement, Recital B) (emphasis added).[4] Each party expressly reserved the right to enforce any and all rights under the parties' agreements, including, but not limited to, the Master Agreement, other than those specifically relating to the

---

[4] A true and correct copy of the 2011 Agreement is annexed hereto as **Exhibit D**.

4

"Disputed Claims." (Settlement Agreement, ¶ 5). Such rights include Plaintiff's right to collect "loss of bargain charges."

Mr. Nathan Sontag, the Defendants' corporate designee under Fed. R. Civ. P. 30(b)(6), conceded this point. Mr. Sontag testified that on July 8, 2011, he sent an email to Ms. Wagner disputing invoices "that were for products that were sent to [Defendants], sometimes at list price, sometimes at weird pricing, inconsistent pricing." Mr. Sontag testified that this communication was "globally directed to resolve disputed invoices," and that this and subsequent communications between Mr. Sontag and Ms. Wagner established the framework for the 2011 Agreement. (Sontag Dep. Tr. at 118:4-123:3; 125:22-127:9). Mr. Sontag further testified that it was his understanding, as of November 4, 2011 (less than a month before the execution of the 2011 Agreement), that the dispute between the parties was "dollars and cents on accounts payable" and "on purchases and payments" and *nothing else*. (*Id.* at 127:20-128:5).

Mr. Sontag further testified that paragraph 5 of the 2011 Agreement provides that "each party reserves the right to enforce any and all rights under the agreement, other than those specifically relating to the disputed claims." (*Id.* at 104:15-22). Mr. Sontag confirmed that this language means each party reserved their respective rights as to any claim that is not a "Disputed Claim" as defined in the 2011 Agreement. (*Id.* at 104:23-105:1). Mr. Sontag then testified that his understanding of the 2011 Agreement was that it settled the disputed bills that were due and owing from Defendants to Plaintiff and "[e]verything else [was] still on the table." (*Id.* at 105:11-13).

Ms. Judy Wagner similarly testified that the 2011 Agreement resolved past invoicing issues open on Defendants' account and nothing else. (Wagner Dep. Tr. at 77:13-18). Ms. Wagner further testified that the 2011 Agreement did not address Defendants' compliance with

5

the reagent commitment levels set forth in the Master Agreement. (*Id*. at 91:16-18). Ms. Wagner explained that notwithstanding the 2011 Agreement, Defendants still needed to comply with their annual reagent commitment levels by December 31, 2011 (which they failed to do). (*Id.* at 92:17-24; 93:4-15; 103:5-104:2). Mr. Jim Hill, an employee of Plaintiff responsible for managing Defendants' account, further corroborated Mr. Sontag's and Ms. Wagner's testimony. Mr. Hill testified that the 2011 Agreement resolved past due invoices that were owed to Plaintiff, and following the execution of the 2011 Agreement, Defendants' annual commitment reagent purchase levels under the Master Agreement remained in full effect and force. (Hill Dep. Tr. at 49:15-50:4; 123:9-20).[5]

The 2011 Agreement also could not have released the "loss of bargain charges" for 2011 because those were neither assessed nor due until February 2012, well after the execution of the 2011 Agreement. Ms. Wagner testified that the loss of bargain charges for Defendants' compliance default for the 2011 year were calculated and assessed in February 2012. (Wagner Dep. Tr. at 115:15-116:19). Given that the loss of bargain charge had not been calculated at the time of the 2011 Agreement (or complained of by Defendants in Mr. Sontag's July 2011 email), it cannot constitute a "Disputed Claim" for "products *purchased*" under the 2011 Agreement.

Based on the foregoing, Plaintiff is entitled to partial summary judgment striking Defendants' Second Affirmative Defense. The undisputed record proves that the 2011 Agreement did not release Plaintiff's loss of bargain charges.

C. **Plaintiff Is Entitled to Summary Judgment on Defendants' First Cause of Action of Their Counterclaim**

Defendants' First Cause of Action of their Counterclaim ("First Counterclaim") fails as a matter of law because the Master Agreement prohibits an award of incidental and consequential

---

[5] All excerpts from the deposition of Mr. Jim Hill cited herein are annexed hereto as **Exhibit E**.

6

damages. Defendants' First Counterclaim alleges that Plaintiff's conduct "caused the defendants to incur substantial costs in providing their clients with the requisite tests they ordered, including increased overtime pay to employees." (*See* Docket No. 49, p. 6, ¶ 7). Defendants' initial disclosures describe with specificity the type of incidental and consequential damages that they seek:

    1.    Approximately $171,425 in overtime paid to chemistry and clerical staff because the plaintiff's equipment was not properly operating and/or installed and was incapable of normal output during regular business hours.

    2.    At least $575,000 in damages (lost revenues from nursing homes) because the plaintiff's equipment was not properly operating and/or installed and was incapable of normal output. Plaintiff's instrumentation was not operating properly and was not able to deliver results timely.[6]

These damages are incidental and consequential damages that the Master Agreement bars.

    1.    *The Master Agreement Expressly Disclaims Incidental and Consequential Damages*

The Master Agreement, among other things, expressly bars incidental and consequential damages:

> THE LIMITED WARRANTY SET FORTH IN THIS SECTION SHALL BE IN LIEU OF AND [ROCHE] EXPRESSLY DISCLAIMS, ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL [ROCHE] BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

(Ex. C at 1-2). Mr. Sontag testified that he understood this contractual provision to mean that Plaintiff would not be liable to Defendants for incidental or consequential damages. (Sontag Dep. Tr. at 51:8-14). There is no dispute of fact that the Master Agreement expressly disclaims incidental and consequential damages.

---

[6] A true and correct copy of Defendants' Fed. R. Civ. P. 26 Initial Disclosures are annexed hereto as **Exhibit F**.

2. *Defendants' Alleged Damages of Overtime Charges and Lost Revenues are Incidental and Consequential Damages*

Indiana law provides that incidental and consequential damages are those expenses incurred by the buyer as a result of the seller's breach.[7] *Michiana Mack, Inc. v. Allendale Rural Fire Prot. Dist.*, 428 N.E.2d 1367, 1373 (Ind. Ct. App. 1981). Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach. Ind. Code § 26-2-715(1). Consequential damages resulting from the seller's breach include: (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty. Ind. Code § 26-2-715(2). Consequential damages include lost profits. *Clark's Pork Farms v. Sand Livestock Sys., Inc.*, 563 N.E.2d 1292, 1298 (Ind. Ct. App. 1990).

Defendants' First Counterclaim and initial disclosures make clear that Defendants are seeking incidental and consequential damages in contravention of the Master Agreement. Moreover, Mr. Sontag testified that Defendants' damages resulted from an alleged failure of Plaintiff's equipment. These damages are not recoverable under the Master Agreement.

*Overtime Costs*. Mr. Sontag testified that Defendants incurred overtime costs because certain tests had to be outsourced and other tests were delayed, allegedly as a result of the failure of Plaintiff's equipment. (Sontag Dep. Tr. at 146:8-23; 152:23-153:11; 193:5-9). Putting aside

---

[7] The Master Agreement provides that Indiana substantive law governs the issue of incidental and consequential damages. (Ex. C at 2).

that Defendants have failed to substantiate such alleged damages, these are incidental and consequential damages under Indiana law and are barred from recovery under the Master Agreement. Even Mr. Sontag testified that these alleged overtime charges are incidental and consequential damages when he stated that "as a consequence of the machine not performing how you expected it to perform, [Analytical] incurred these overtime changes." (*Id.* at 193:10-13).

*Lost Revenues*. Defendants' alleged lost revenues also constitute incidental and consequential damages under Indiana law and are barred by the Master Agreement. Mr. Sontag testified that Defendants lost revenues from nursing home customers who terminated their business relationship with Defendants because of issues with Plaintiff's equipment. (*Id.* at 179:16-180:6; 182:16-21). Again, putting aside that Defendants have failed to adduce any evidence showing lost business (or that such loss was caused by failures of Plaintiff's equipment), lost revenues are consequential damages. *See Clark's Pork Farms*, 563 N.E.2d at 1298. Even Mr. Sontag acknowledged that the alleged lost revenue was a *consequence* of the machines not performing as they were supposed to perform. (Sontag Dep. Tr. at 193:14-23).

Defendants' First Counterclaim fails as a matter of law and must be dismissed. The damages sought by Defendants constitute incidental and consequential damages under Indiana law, and the Master Agreement precludes Defendants from seeking any recovery based on such damages.

    3. *Contractual Limitation of Incidental and Consequential Damages Is Enforceable under Indiana Law*

A contract is the product of the free bargaining of the parties. *Guideone Ins. Co. v. U.S. Water Sys.*, 950 N.E.2d 1236, 1246 (Ind. Ct. App. 2011). As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting and their

9

contracts, when entered into freely and voluntarily, are enforced by the courts. *Id.* at 1246-47. It is in the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract, and a person is presumed to understand and assent to the terms of the contracts she signs. *Id.* Accordingly, the parties to a contract are free to include in the agreement any provisions they desire so long as such provisions do not offend the public policy of this state. *Id.*

In accord with the foregoing general principle of enforcing agreed upon contractual terms, Indiana law recognizes exculpatory clauses. *See Gen. Bargain Ctr. v. Am. Alarm Co.*, 430 N.E.2d 407, 411 (Ind. Ct. App. 1982). Parties are permitted to make such contracts so long as they are knowingly and willingly made and free from fraud. *Id.* at 411-412. No public policy exists to prevent such contracts. *Id.* at 412. However, exceptions exist where the parties have unequal bargaining power, the contract is unconscionable or the transaction affects the public interest such as utilities, carriers and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public. *Id.* None of these exceptions exist here.

First, Plaintiff and Defendants have equal bargaining power. The parties to the Master Agreement are sophisticated commercial actors that have contracted with each other numerous times prior to 2007. (Sontag Dep. Tr. at 100:20-101:8). Defendants have also contracted with other sophisticated chemistry vendors such as Abbott Laboratories. (Sontag Dep. Tr. at 56:25-57:19). Further, as discussed below, the Master Agreement is not unconscionable. Lastly, the underlying transaction for the use of equipment and supplies is not a matter of public interest suitable for regulation.

Moreover, Indiana law permits contractual provisions limiting liability:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Ind. Code § 26-1-2-719(3); *see also Gen. Bargain Ctr.*, 430 N.E.2d at 412. Comment One to section 719 of Indiana's Uniform Commercial Code provides that "[u]nder this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." The Indiana Court of Appeals in *General Bargain Center* agreed, holding that Ind. Code § 26-1-2-719(3) indicated the legislative approval of damages limitations provisions. *Gen. Bargain Ctr.*, 430 N.E.2d at 412. Indeed, parties are permitted to by contract predetermine the area of risk and extent of exposure by contract and absent the exceptions above, such agreements are enforceable. *Id.* The burden is on the party resisting the limitation of damages provision to bring into the record facts evidentiary in nature to create an issue of fact which it contends exists to escape summary judgment. *Id.* In *General Bargain Center*, the Indiana Court of Appeals found nothing in the record as to whether the contract was unconscionable and against public policy. A similar result should follow here as Defendants have adduced no evidence showing that the Master Agreement is unconscionable or against public policy.

Unconscionability is a question of law determined on the basis of circumstances existing at the time the contract was made. *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1086 (Ind. 1993). Further, the party raising the issue of unconscionability bears the burden of proof. *Id.* "Substantive unconscionability" refers to oppressively one-sided or harsh terms of a contract and generally involves cases where courts have determined the price to be unduly excessive or where the terms of the contract unduly limit a buyer's remedies. *Id.* at 1087. A substantively

11

unconscionable contract is one that no sensible person would make and such as no honest and fair person would accept. *Id.* Often there are circumstances which show that there was unequal bargaining power at the time the contract was executed which led the party with lesser power to enter it unwillingly or without knowledge of its terms. *Id.* In accordance with this standard, Indiana courts have rejected claims that contractual limitations of remedy are substantively unconscionable. *Id.* Further, assent to a limitation of liability may be assumed where a knowledgeable party enters into a contract, aware of the limitation and its legal effect, without indicating non-acquiescence to those terms. *Id.*

The Indiana Supreme Court analyzed the issue of whether a disclaimer of consequential and incidental damages is unconscionable in *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*, 746 N.E.2d 941 (Ind. 2001). In that case, Appellant Rheem sold furnaces to Appellee Phelps and disclaimed consequential and incidental damages. *Id.* at 944. Appellee Phelps sued Rheem for alleged defective furnaces and sought damages for lost profits from customers who no longer would do business with Phelps. *Id.* at 945. Phelps argued under Ind. Code § 26-1-2-719(2) that because Rheem's repair attempts failed, the limited remedy of replacement of parts failed its essential purpose and therefore, Phelps could claim all remedies provided by the UCC, including consequential damages. *Id.* at 946. However, the Indiana Supreme Court rejected Phelps' argument and held that Ind. Code § 26-1-2-719(2) does not categorically invalidate an exclusion of consequential damages when a limited remedy fails of its essential purpose. *Id.* at 947. The Indiana Supreme Court further held that the freedom to set contractual terms is especially important in the context of a commercial transaction. *Id.* at 950. Sophisticated commercial actors should be free to allocate risks as they see fit, and courts should not interfere simply because such risk has materialized. *Id.* at 950-51. Based on foregoing

reasoning, the *Rheem* court reversed the trial court's denial of summary judgment on Phelps' claims for incidental and consequential damages. *Id.* at 952.

In line with the holding in *Rheem*, this Court should grant Plaintiff's partial motion for summary judgment as to Defendants' First Counterclaim seeking incidental and consequential damages because such damages are expressly barred by the Master Agreement.

## IV.  CONCLUSION

Based on the foregoing arguments and authorities cited therein, Plaintiff respectfully requests that this Court grant its Motion for Partial Summary Judgment and enter an Order in substantially the same form as the proposed order filed contemporaneously herewith.

Dated: July 31, 2014                              Respectfully submitted,


By: */s/Michael J. Barrie*
  Michael J. Barrie, Esquire
  Benesch, Friedlander, Coplan & Aronoff LLP
  222 Delaware Avenue, Suite 801
  Wilmington, DE  19801
  (302) 442-7068

  - and -

  Benesch, Friedlander, Coplan & Aronoff LLP
  White Plains Center
  50 Main Street, Suite 1000
  White Plains, NY  10606
  (914) 682-6812
  *Counsel for the Plaintiff*